(No. 42629.—▇▇▇▇▇▇▇▇)

WILLIAM E. DAVERN, JR., Appellee, *vs.* CIVIL SERVICE COMMISSION OF THE CITY OF CHICAGO *et al.,* Appellants.

*Opinion filed Nov. 17, 1970.—Rehearing denied Jan. 27, 1971.*

WARD, J., took no part.
KLUCZYNSKI and GOLDENHERSH, JJ., dissenting.

RAYMOND F. SIMON, Corporation Counsel, of Chicago, (MARVIN E. ASPEN and HOWARD C. GOLDMAN, Assistants Corporation Counsel, of counsel,) for appellants.

RICHARD F. McPARTLIN, of Chicago, for appellee.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, William E. Davern, Jr., passed an examination given by the Civil Service Commission of the City of Chicago (hereinafter referred to as Commission) for the position of patrolman in the Chicago Police Department, and was, on September 27, 1965, certified for appointment to that position.

On October 19 plaintiff was directed to appear before the Commission on October 29 "to show cause why your certification to the position of patrolman should not be disapproved." Plaintiff appeared as directed, without counsel, and answered questions by the members of the Commission, and no witnesses were presented against him. Thereafter, on November 4, plaintiff was advised by letter that his certification had been disapproved, and his name was to be stricken from the eligible list and from the register.

He then commenced this action by filing his complaint under the Administrative Review Act (Ill. Rev. Stat. 1965, ch. 110, pars. 264-279) seeking reversal of the order of the Commission. The cause was remanded to the Commission by the trial court for the taking of additional evidence, pursuant to which an "investigation" before the Commission was held on November 2, 1966. The Commission confirmed its original decision of decertification and removal. Upon receipt of the supplemental record the circuit court of Cook County reversed the decision of the Commission and held it was contrary to the manifest weight of the evidence. It ordered the plaintiff's immediate restoration to the eligible list and certification.

The Commission appealed to the appellate court which affirmed the judgment of the circuit court (115 Ill. App. 2d 93) and held that the plaintiff could be removed from the eligible list and the register only upon presentation of proof of cause for removal and that the Commission's decision was against the manifest weight of the evidence. We granted defendants' petition for leave to appeal. 42 Ill.2d 584.

The Administrative Review Act provides that agency findings on questions of fact are *"prima facie* true and correct." (Ill. Rev. Stat. 1967, ch. 110, par. 274.) We have construed this provision to limit the function of the reviewing court to ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence. (See *e.g., DeGrazio* v. *Civil Service Com. of Chicago,* 31 Ill.2d 482; *Logan* v. *Civil Service Com.,* 3 Ill.2d 81; *Harrison* v. *Civil Service Com. of Chicago,* 1 Ill.2d 137; *Drezner* v. *Civil Service Com.,* 398 Ill. 219.) The courts will not reweigh the evidence, but are limited to a determination whether the final decision of the administrative agency is just and reasonable in light of the evidence presented. (*Fantozzi* v. *Board of Fire and Police Com'rs of Villa Park,* 35 Ill. App. 2d 248, affirmed 27 Ill.2d 357.)

Neither the appellate court nor the trial court may substitute its judgment for that of the administrative agency. (See *e.g.*, *DeGrazio* v. *Civil Service Com. of Chicago,* 31 Ill.2d 482; *Olsen* v. *Civil Service Com. of Chicago,* 28 Ill. App. 2d 146; *Miglieri* v. *Lee,* 16 Ill. App. 2d 545.) The sole question before us, therefore, is whether the Commission's finding that plaintiff's name was properly stricken from the eligible list was sufficiently supported so that it cannot be said to be contrary to the manifest weight of the evidence.

The Commission could have found plaintiff to be of "bad character" within the meaning of section 6 of Rule II of its rules which provides in part as follows: "Disqualifications. Proof of * * * bad character, dissolute habits, immoral conduct * * * shall be grounds for * * * removal from an eligible register * * *."

The appellate court made a comprehensive review of all the facts and evidence offered in the two hearings before the Commission (115 Ill. App. 2d 93), and in view of the fact that the petition for leave to appeal, upon which defendants elected to stand in the instant proceedings, did not contain a reargument of those facts, we deem it sufficient to merely highlight the contentions and facts applicable thereto.

The plaintiff, prior to the certification here in question, had previously been a member of the Chicago Police Department for a period of approximately five years. In April of 1959, while assigned to the Summerdale Police District, he participated in the arrest and investigation of Richard Morrison, who was later found to have been involved in criminal activities with certain police officers other than the plaintiff. These activities of Morrison and those police officers drew national attention.

All of the alleged misdeeds of the plaintiff are predicated on activities which took place in relation to the arrest and investigation of Morrison. "The only witness for the Police Department was Marcus McGill, a sergeant in the Depart-

ment, who testified that the plaintiff's name was mentioned as a result of the police investigation into the statements and allegations made by Richard Morrison. The plaintiff was a detective on April 14, 1959, the night that Morrison and Jerry Bossuyt were arrested in the Summerdale Police District. The arresting officers were Handley and Gilmartin. The detectives involved as investigating officers were the plaintiff, Kann, and Norcott. The following property was found in Morrison's car: a Polaroid camera; bottles of liquor; cigarettes; and approximately $475 in coins. The arresting officers and the detectives escorted Morrison, Bossuyt, and the seized property to the Summerdale Police Station where the evidence was inventoried. Through police channels, it was learned that the items matched a description of merchandise taken in the burglary of Carmen Sakol Motors, which was located in another Police District. Morrison and Bossuyt were then detained on a burglary warrant. Continuing, McGill stated that although the property seized should have been taken at the earliest possible time from the Summerdale Station to the custodian's office located in Central Police Headquarters, the merchandise remained at Summerdale for six days before it was sent to the proper place. In addition, the Polaroid camera was entered on Summerdale's Recovered Property Inventory Sheet without its serial number being listed. No detective placed his private marking on the camera either. Police records showed that at the end of May, 1959, the plaintiff removed the camera from the Custodian's Office and kept it out for five or six days." 115 Ill. App. 2d 93, 98-99.

The plaintiff resigned on May 10, 1960, allegedly in deference to the wishes of his father, a physician, due to the constant adverse publicity regarding the police department. Specifically, the Commission urged in the appellate court proceedings that the record in this case demonstrates that the plaintiff is of "bad character" for the following reasons: "(1) he did not place the Polaroid camera's serial number

on Summerdale's inventory sheet; (2) he was one of the recovering officers and did not place his mark on the camera; (3) he removed the camera from the Custodian's Office on May 27, 1959, and it was not returned until June 2, 1959; (4) he was not the arresting officer and hence violated the rules of the Chicago Police Department by removing the camera on May 27, 1959; (5) he resigned while under investigation; (6) the records of the Police Department indicate that he lied in making certain answers to questions posed to him in a polygraph examination." 115 Ill. App. 2d 93, 104.

In answer to the charges of failure to place the serial number of the Polaroid camera on Summerdale's inventory sheet and failure to place an identifying mark on the camera as required by Chicago Police Department rules, it is argued that nothing in the record reveals why these duties were solely that of plaintiff when there were four other officers participating in the arrest and investigation. No good reason is suggested and none occurs to us as to why the noncompliance of the other officers should excuse plaintiff's noncompliance. Rule 338 of the Chicago Police Department requires property held as evidence to be inventoried by "the arresting officer", and Rule 339 requires such property to be properly marked by "the recovering officer." These terms are not defined in the rules and plaintiff contends that even though he was one of five officers who accompanied the accused and the evidence to the police station, it has not been established that he was either "the recovering officer" or "the arresting officer" within the meaning of the rules. It is indisputable, however, that plaintiff either was the arresting officer or he was not. If he was not the arresting officer, he violated Rule 338 when he obtained the camera from the police custodian for use in court, because that rule requires that evidence necessary for use in court be obtained by "the arresting officer".

As to the contention that the camera was not returned

to the police custodian for a period of five days after its removal by plaintiff for use in court, he explains that the court date was Wednesday, May 27, 1959, and due to the lateness of the day, he returned the camera to the Summerdale station for pickup rather than to the custodian's office. Then, allegedly because of the intervening Memorial Day week-end, the camera was not returned until Tuesday, June 2, 1959. Rule 338 states in part that "[W]hen the evidence is not disposed of in court, the arresting officer shall return the evidence to the police custodian." This rule clearly requires the officer who checks out the evidence to return it to the police custodian. Even if the camera could not have been returned promptly on Wednesday, May 27, the occurrence of Memorial Day on Saturday, May 30, can scarcely be thought to justify delaying return until the following Tuesday, June 2. Nor does the fact that plaintiff was on medical leave during this period serve to exonerate him in view of the fact that he was also on medical leave when he obtained the camera from the police custodian.

Certain police officers other than plaintiff were found to have been criminally involved with Morrison, and one officer was convicted of tampering with the very evidence in question here. No matter how innocently plaintiff actually acted, or how widespread the loose practices at that time as to the handling of evidence, plaintiff's non-compliance with the departmental rules and regulations and his subsequent resignation during the investigation of the Summerdale Police District need not be disregarded. In light of all of the circumstances surrounding the Summerdale investigation, the Commission was not obliged to accept plaintiff's explanation for his resignation.

The contention that plaintiff lied when answering questions posed to him in a polygraph examination is based upon a letter sent to the Commission by the Director of Personnel of the Police Department containing the alleged conclusions of an un-named polygraph operator. The results of the lie-

detector test were never tendered to the Commission and the polygraph operator did not testify. While we agree with the appellate court that this evidence was hearsay, we are of the opinion that there remains sufficient competent evidence to support the Commission's decision.

The appellate and circuit courts incorrectly found the Commission's actions to be against the manifest weight of the evidence. The judgments are accordingly reversed and the cause remanded to the circuit court of Cook County with directions to confirm the Commission's order striking plaintiff's name from the eligible list.

*Reversed and remanded, with directions.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.

KLUCZYNSKI and GOLDENHERSH, JJ., dissenting.