J.P. SCHERMERHORN *et al.*, Plaintiffs-Appellants, v. THE DEPARTMENT OF REGISTRATION & EDUCATION *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—88—0852

Opinion filed June 27, 1989.—Rehearing denied August 15, 1989.

Ross S. Welch, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (William K. Kane, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

The Illinois Department of Registration and Education (Department) found plaintiffs guilty of commingling funds held in a property management trust for the benefit of others, fined them $2,500, and placed their real estate licenses on probation for two years for having contravened certain provisions of the Real Estate License Act of 1983 (Ill. Rev. Stat. 1983, ch. 111, par. 5801 *et seq.*). On administrative review, the circuit court affirmed. Plaintiff now appeals, and the issue on review is whether the decision of the Illinois Department of Registration and Education was against the manifest weight of the evidence.

The Department brought a two-count complaint against plaintiffs alleging that they had violated section 18(e)(12) (Ill. Rev. Stat. 1983, ch. 111, par. 5818(e)(12)) and requested the State Real Estate Administration and Disciplinary Board (Board) that the real estate broker's licenses of John P. Schermerhorn and the corporate real estate license of J.P. Schermerhorn & Co. (the company) be suspended, revoked, or that other appropriate discipline be imposed. The charges were (1) that plaintiffs had commingled funds held in a property management trust for the benefit of others, and (2) that plaintiffs refused to rent an apartment to a prospective tenant because he was black. The Board issued findings of fact and conclusions of law, finding plaintiffs guilty of the commingling charge, but not guilty of the second charge. Plaintiffs have been represented throughout all of these proceedings by attorney Ross Welch.

Gilbert Lynn, chief audit supervisor for the Department, audited the books of plaintiff company and discovered that $75,000 had been withdrawn from the company's property management account and placed in a commercial paper investment in the name of J.P. Schermerhorn & Co. The company offered property management services

to its customers and maintained a management account wherein monies collected in the course of rendering those services were deposited and held in trust. Lynn's audit further revealed that by taking funds from its property management account and investing them in commercial paper in the company's name, such investment had earned approximately $33,000 in interest from 1980 through 1983. Plaintiffs deposited the interest so earned into the company's operating account and credited it as interest income; the commercial paper investment was recorded as cash in its property management account.

In response to Lynn's inquiry as to whether their clients had consented that plaintiffs purchase investments with their money and retain the interest earned, plaintiffs produced a letter, which they claimed had been sent to the affected clients and which they also claimed constituted their clients' assent that the company retain as its own the interest earned by the management account:

"As we discussed for the real estate tax reserve account we will maintain a minimum amount each month to have on hand the total amount of taxes when they are due and payable through John Luecker.

The bank has informed us that they are in a position to purchase commercial papers for these large reserves and the interest to be credited to our account. This information is to let you know that the interest earned by us will be used by us to maintain this account at all times ***."

According to this letter, Lynn testified, the interest earned on the investment should have been deposited into the company's tax account for property management customers and not in the company's operating account.

Further, after the Department requested plaintiffs to furnish a clear and accurate breakdown of the ownership of the $75,000, plaintiffs sent the Department an affidavit stating that, notwithstanding the contents of the letters they sent to their clients, the $75,000 belonged entirely to Ross Welch, one of the property management account owners and the attorney for plaintiffs in this case. The affidavit further stated that Welch had consented to the company's use of his money. But when Lynn interviewed Welch regarding the contents of plaintiffs' affidavit, Welch had no recollection of having granted such consent. Welch later informed Lynn that any interest earned on his money was insignificant. Plaintiff J.P. Schermerhorn testified at the hearing that his attorney, Welch, owned the money taken from the property management account to purchase the commercial paper in the company name and had given his oral consent to its use.

The Board found, and the circuit court affirmed, that this arrangement constituted a commingling of funds for the reason that J.P. Schermerhorn & Co. received interest income on money it did not own, that the persons whose money was invested were deprived of its use, and that plaintiffs meanwhile received the benefits of the interest income from the commercial paper investment as it was deposited into their company's operating account.

■ The Real Estate License Act provides that the Department of Registration and Education shall administer the Act. (Ill. Rev. Stat. 1987, ch. 111, par. 5808.) It also provides that a Real Estate Administration and Disciplinary Board be created and empowered to conduct hearings of alleged violations of the Act. (Ill. Rev. Stat. 1987, ch. 111, par. 5820.) The Board's findings are then presented to the Department for review and approval. A final decision of the Department is subject to judicial review pursuant to the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*). Ill. Rev. Stat. 1987, ch. 111, par. 5821.

In the present case, the Board found that plaintiffs violated section 18(e)(12) of the Real Estate License Act, which provides:

"§18. The Department may refuse to issue or renew, may place on probation, may suspend or may revoke any license, or may censure, reprimand or impose a civil penalty not to exceed $10,000 upon any licensee hereunder for any one or any combination of the following causes:

\* \* \*

(e) Where the licensee in performing or attempting to perform or pretending to perform any act as a broker or salesperson, or where such licensee, in handling his own property, whether held by deed, option, or otherwise, is found guilty of:

\* \* \*

(12) Commingling the money or property of others with his own." (Ill. Rev. Stat. 1983, ch. 111, par. 5818.)

After consideration of the entire record, the Board found plaintiffs guilty of commingling funds held in trust with their own funds, and the circuit court upheld its decision.

The function of a reviewing court is limited to a determination of whether the administrative decision under review is against the manifest weight of the evidence. (*Davern v. Civil Service Comm'n* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) An agency decision will not be disturbed unless an opposite conclusion is "clearly evident" from the evidence. *Rasky v. Department of Registration & Education* (1980), 87

Ill. App. 3d 580, 588, 410 N.E.2d 69, *appeal dismissed* (1981), 454 U.S. 806, 70 L. Ed. 2d 75, 102 S. Ct. 78, citing *Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33, 40, 360 N.E.2d 536.

Plaintiffs initially identify our standard of review as whether "the defendants proved by a preponderance of the evidence that plaintiffs are guilty of commingling," arguing that there is no evidence to support the finding that they commingled the money of others with their own, and that the testimony of J.P. Schermerhorn that he never put his own money into the management account stands uncontradicted.

Second, plaintiffs assert that the record shows that a letter was sent by plaintiffs' attorney to each member of the Board hearing the case, specifically pointing out that commingling could not occur when the money used to buy the commercial paper came out of the J.P. Schermerhorn & Co. management account, and the commercial paper was brought in that same name. Plaintiffs allege that because this argument was never answered, it stands admitted under Supreme Court Rule 341(e)(7). 107 Ill. 2d R. 341(e)(7).

Third, plaintiffs contend that commingling cannot exist where there is a transfer of money within the same legal entity. Plaintiffs then list several facts which they claim show that only one legal entity existed. These facts include: (1) that the commercial paper was purchased by the J.P. Schermerhorn & Co. management account, and held by the same account; (2) that the $75,000 was carried as cash in the company's management account; (3) that J.P. Schermerhorn never put personal funds in the management account; and (4) that the $75,000 was always shown on the company's books as an asset of the management account.

Fourth, plaintiffs maintain that Welch's oral consent was sufficient to authorize the retention of the interest on the commercial paper by the corporation in a separate account, *viz.*, the operating account of the corporation.

We hold that the circuit court correctly affirmed the Department's decision. The issue in this court is not, as defendants would have it, whether "the defendants proved by a preponderance of the evidence that plaintiffs are guilty of commingling." Although this may have been defendants' burden at the hearing stage of the proceeding, the issue now, as we have previously noted, is whether the manifest weight of the evidence supports the Department's decision. (*Davern v. Civil Service Comm'n*, 47 Ill. 2d at 471.) Deference is to be given to the Department's decision, and it becomes plaintiffs' burden in this court to show that this decision is clearly erroneous. In order to set aside an agency decision, the reviewing court must find that all rea-

sonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous. *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1093, 492 N.E.2d 929.

Plaintiffs' argument that J.P. Schermerhorn never put his own money into the management account is irrelevant. Defendants do not accuse plaintiffs of doing any such thing. The commingling in this case arose when plaintiffs took the interest from commercial paper purchased with funds belonging to their clients and deposited that interest into a separate operating account used for the benefit of the corporation—an activity closely akin to conversion, if not arrant conversion itself.

Plaintiffs' second and third arguments, involving Welch's letter sent to the members of the Board and that commingling cannot exist where there is a transfer of money within the same legal entity, are equally meritless. Especially pointless is plaintiffs' contention that the contents of the letter are admitted by the Department as true pursuant to Supreme Court Rule 341(e)(7) because the Department failed to respond to it. Supreme Court Rule 341(e)(7) provides that the points not argued in an appellant's brief are waived and cannot be argued in the reply brief, oral argument, or on petition for rehearing. (107 Ill. 2d R. 341(e)(7).) This rule is obviously unrelated to plaintiffs' contention.

Merely to juxtapose plaintiffs' arguments with the facts of this case is to lay bare their utter frivolity. The contents of the letter are not disputed and are clearly a matter of record. It states that the commercial paper was purchased with funds from the J.P. Schermerhorn management account, and that it was purchased in the company's name. This in no way changes the facts that the $75,000 continued to be listed as cash in the management account, that the $33,000 in interest generated from the investment was appropriated by the corporation, and that plaintiffs failed to demonstrate that the affected clients consented to the arrangement. In fact, when asked about consent, the company first gave the Department a letter which stated that the interest from investing funds from the property management account would be used by the company to maintain a fund to be used for the payment of their clients' property taxes. Only later, when pressed for an exact breakdown of the ownership of the $75,000, did the company come forward with the allegation that the entire amount was owned by Welch and that he orally consented to the arrangement. The company's "proof" of this is J.P. Schermerhorn's affidavit stating that it was so. Moreover, Lynn testified

that Welch could not recall whether or not he gave permission for the retention of the interest. Lynn further testified that Welch later informed him that any interest involved was insignificant.

Indeed, it is quite evident that Welch plays a rather unusual part in these proceedings, so unusual in fact that we hereby order the clerk of this court to transmit a copy of this opinion to the Attorney Registration and Disciplinary Commission for the purpose of inquiring into whether there is involved here any contravention on his part of our Code of Professional Responsibility. (107 Ill. 2d Rules, art. VIII.) At any rate, the Department having weighed the evidence and having adjudged the credibility of the witnesses, we find that the manifest weight of the evidence clearly supports the Department's decision. Accordingly, we affirm the circuit court's decision.

Affirmed.

HARTMAN and DiVITO, JJ., concur.